## Crown Coal & Tow Company v. John Taylor and Bart S. Adams.

1. INSTRUCTIONS—*Should be Supported by the Evidence.*—An instruction not sufficiently supported by material evidence should never be given, and where there is sufficient material evidence to support an instruction, it is error to assume facts not admitted or proven beyond dispute.

2. SAME—*When a Party Can Not Complain of an Improper Instruction.*—A party who asks for an improper instruction is not in a position to complain of an error of the court in modifying it.

**Assumpsit,** for the value of a leasehold estate, sold, etc. Trial in the Circuit Court of St. Clair County; the Hon. MARTIN W. SCHAEFFER, Judge, presiding. Verdict and judgment for plaintiffs. Appeal by defendant. Heard in this court at the August term, 1898. Affirmed. Opinion filed March 10, 1899.

G. A. KOERNER and VICTOR K. KOERNER, attorneys for appellant.

WEBB & WEBB, attorneys for appellees.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was a suit in assumpsit in the Circuit Court of St. Clair County, by appellees against appellant.

The declaration alleges that appellant, on March 31, 1897, was indebted to appellees in the sum of $2,500 for a certain leasehold estate before that time owned by appellees, and then and there bargained, sold and transferred by appellees to appellant, at its request.

The common counts, for goods sold and delivered, and for interest forborne, are added.

To this declaration appellant pleaded the general issue.

Trial was by jury. Verdict and judgment in favor of appellees for $3,232.07.

Appellant's counsel urge, in their brief and argument, as grounds for reversal: That the verdict is against the weight of the evidence; that the court erred in modifying one of the instructions given on behalf of appellant, and that the court, over appellant's objection, permitted one of appellees' attorneys to make improper statements and remarks to the jury during the course of his argument.

Edward L. Thomas testified:

"Live in Belleville. Was one of the organizers of the Crown Coal Company. The reorganization took place March 25, 1893, and its named changed to Crown Coal and Tow Company, the present defendant. All the stockhold-

ers and directors of the old and new companies were present at the reorganization March 25, 1893—Samuel H. Leathe, his son, Samuel Leathe, John Holmes, Lucien N. Chipley, Charles W. Thomas, John T. Taylor, James Waddock, Bart S. Adams, Alpheus Boling, Henry M. Needles; myself and Bissell Thomas, Samuel H. Leathe, Lucien N. Chipley, John T. Taylor, Bart S. Adams, James Waddock and Edward L. Thomas were directors of the new company; was acquainted with the Harmony mine. The plaintiffs in the case, Taylor and Adams, held the leasehold. At that meeting, after the reorganization was perfected, Chipley was elected president.

There had been a number of conversations between myself and Mr. Taylor and Adams, and Mr. Leathe and Chipley, in regard to the mines of the old company, and they were informed the Harmony mine did not belong to the old company. The old company had no interest in that mine. Mr. Chipley, knowing that fact, stated, 'How about the Harmony mine ?' Taylor replied in substance that they wanted to keep it, he and Adams. Chipley said that could not be permitted; that if they could not have the Harmony mine the thing would stop right there. He said, 'We are not going to have you two on the outside.' Taylor and Adams agreed to sell. They wanted $3,000; Chipley said that was too much, and asked me what I thought; I said $2,500, and no more. He asked Taylor if he would take $2,500. Taylor and Adams consulted, and agreed to take $2,500. Mr. Leathe was vice-president and treasurer; the thing was transacted in his presence and agreed on between Chipley, as president, and these two as owners. All directors were present."

Charles W. Thomas testified:

" Was present March 25, 1893, in my office, when Crown Coal & Tow Company was reorganized. Know about sale made by Adams and Taylor; that was a meeting of all stockholders and directors of the Belleville City Railway and the Crown Coal & Tow Company and the general arrangement of the affairs of both companies; the question of the Harmony mine came up; it or the leasehold was then owned by Taylor and Adams, who were also stockholders and directors of the Crown Coal & Tow Company; Chipley was president. He brought up the subject. He said, 'What shall we do about the Harmony mine ?' Taylor said they preferred to run it outside; Chipley said that would not do; he would have no mines running outside. 'We must

Crown Coal & Tow Co. v. Taylor.

arrange this now.' He asked Taylor what he would take
for it; Taylor and Adams talked it over and said $3,000; Chip-
ley said it was too much, and asked E. L. Thomas what he
thought, and he thought it was too much, and my brother
said $2,500 at the outside; then Chipley said they would
give $2,500, and Taylor said we will take it. Then Chipley
said, ' We can proceed.' That occurred March 25, 1893, in
my office; know nothing subsequent; have no interest in this
suit."

Alpheus Boling testified :

" Was at the meeting March 25, 1893; Chipley spoke up
and said, ' How about the Harmony mine ? ' Taylor said, ' I
think we will keep that ourselves.' Chipley said, ' No,
we've got to have that or the deal goes over,' and Chipley
asked what they would take and he says $3,000, and he and
Ed. Thomas said it was too much. I believe I told that to
Taylor myself; I did not want the deal to go over, so they
talked about it and $2,500 was agreed upon. Chipley was
president."

John T. Taylor, in his own behalf, testified :

"Was present at meeting in C. W. Thomas'.office March 25,
1893; Chipley said several times that the Harmony mine had
to go in, and I said Adams and I were selling out, and if
you want that mine you will have to pay for it; I said we
want to keep it; he said that won't work, you've got to go
in with that mine; what do you want for it ? I said $3,000;
Chipley said it was too much and Thomas said so; Thomas
said $2,500 was right and I said, All right, we will take it;
then we went ahead with the other business; the Crown
Coal Company had no interest in that mine; it belonged to
Taylor and Adams; we bought out Kunze; never have been
paid the $2,500; requested payment different times from
Mr. Leathe; he was president; we had a meeting when the
Crown Coal Company was paid off in bonds; Adams, Tay-
lor and Thomas were paid and I asked him to pay for the
Harmony mine; I thought he had better give us bonds; he
said to wait awhile he would settle up later; was willing to
take bonds. About two months after that Adams and I went
to his office and I asked what he was going to do about the
payment for that Harmony mine; we wanted money or
bonds. He says, ' Keep quiet now, I don't want these bonds
scattered around; when we deal out the bonds I will fix up
the Harmony mine.' We let it drop, but he has done noth-
ing yet."

Bart S. Adams testified in his own behalf :

" Am one of the plaintiffs; was present at the meeting March 25, 1893; Taylor said the Harmony mine was worth $3,000 and Chipley objected, and E. L. Thomas said $2,500 he thought it was worth, and all were present and accepted it; they agreed to pay $2,500 for it; I was a director; Taylor and I owned the Harmony mine; have requested the payment of this $2,500 from Samuel H. Leathe; Taylor asked him for the $2,500 and he said not to make a fuss about it; it would come out all right, if we would wait, and we have been waiting ever since."

Henry M. Needles testified :

" Was present at the meeting in Charles W. Thomas' office March 25, 1893; was not present all the time; it lasted all day. I remember Mr. Chipley and Mr. Leathe, I believe, insisted on having the Harmony mine go in and Mr. Taylor objected; they finally agreed to let it go in; I think $2,500 was the price; all the stockholders and directors were there. I was simply a stockholder."

J. H. Waddock testified:

" Live in St. Louis; was present in Mr. Thomas' office March 25, 1893; at the meeting the question came up about the purchase of the Harmony mine, owned by Taylor and Adams; after all this other property had been sold to the Crown Coal & Tow Company and the arrangements made by the directors, the Harmony mine question came up; Chipley asked what they were going to do about it; Taylor said they would keep it; Chipley objected and insisted upon the mine being put into the Crown Coal & Tow Company; the question of price arose and Taylor said $3,000; Chipley and Thomas said it was too much, and Thomas said $2,500 was sufficient; the matter was talked over and all agreed to it; I was a director; the arrangement was made in the presence of all the directors; I was acquainted with the Harmony mine and with Samuel H. Leathe; Leathe was elected president; he owned the majority of the stock and in fact was the whole thing."

Mr. Chipley, testifying on behalf of appellants, states that under that arrangement the property belonging to the Crown Coal Company, the property acquired by Mr. Leathe through purchase of coal lands and tugs, and the property owned by Mr. Thomas, Mr. Taylor and Mr. Adams, was to

be turned in for stock in the new company, with the proviso that whenever the bonds of the new company were sold, the parties turning in this property were to be reimbursed from the sale of bonds the amount they had invested in the two companies; Leathe to be paid first, afterward Thomas, Taylor and the others; that was a personal agreement between Leathe and these parties and himself; the property of Adams, Thomas and Taylor, that went into the Crown Coal & Tow Company under that arrangement, consisted of the Adams interest in the Western Coal & Tow Company, the interest in Crown coal mines and the interest in the Harmony mine; in that way the property came into the hands of the Crown Coal & Tow Company.

John Kunze testifies that Taylor told him that they would have to take stock for it, and put it in the new concern; that he thinks he had a conversation with Adams, but is not positive if this subject was mentioned.

Deposition of Samuel H. Leathe then read to the jury:

"Have resided in St. Louis forty-one years. Have been connected with the Crown Coal & Tow Company since about March 25, 1893, through negotiations with Thomas, Adams and Chipley. I was a stockholder, director and treasurer, and became president. There was a meeting that day. I know plaintiff slightly since then, and a short time before. Was first elected director, then treasurer and president. Continued as stockholder and officer until November, 1895. I owned the principal interest and had the general management. On March 25, 1893, the Crown Coal & Tow Company did not purchase from Taylor and Adams property known as the Harmony mine. Knew little or nothing of Harmony mine at that time; nothing of its value or titles or anything of that kind. Never agreed as officer or director to purchase it. I put money in at first. I had purchased some coal lands and the Griffiths' interest (two-thirds) in the Western Coal & Tow Company; the other one-third was owned by Bart S. Adams or the Adams estate. Purchased three tugs, two-thirds interest in two from Mrs. Griffith, and another one outside. The Adams estate put in their interest in the mines in the Western Coal & Tow Company. It was understood the Harmony mines and all the mines went in. Taylor had some stock in the Crown Coal Company. The

name was changed to Crown Coal & Tow Company. No purchase was made by that company of the Harmony mine or a leasehold interest in it. I made no such purchase. No one else could have made it, except the board of directors."

The foregoing is the substance of all the direct evidence bearing upon the issue as to whether appellant purchased of appellees the leasehold estate, as charged in the declaration.

On cross-examination, both Taylor and Adams admitted that they testified, in another case, that they sold the Harmony mine to Mr. Leathe. They say in explanation, in substance, that Leathe held the majority of the stock, managed the entire business, controlled the company, paid the bills, sold out all the interests of all parties, including the bonds; that no one else had any say; that they considered him the whole thing; that they did not understand all the technical points, but spoke of Leathe and the company as one and the same.

On cross-examination Mr. Leathe testified:

" Heard something a long time subsequent that the old company (the Crown Coal Company) didn't own the Harmony mine. Don't think I heard anything said about it March 25th, nothing that interested me. Nothing said about the price, or dispute as to price. Was right in the room. I heard nothing ; nothing at all about the sale was said to me. Heard nothing at all that interested me. It was to go in the deal and the valuation was to be determined subsequently. In the final settlement under our agreement it would have to come up. The agreement of January 25th carried everything. All property put in was to be paid for in case there was sufficient to pay for everything. 1 sold out all the interest of myself and the others, the bonds included. I gave a bond to indemnify the company against the titles of the property. I am the sole party representing the company. There may have been something said March 25th which I did not hear. No agreement was made to my knowledge. I made none. Don't know what was said between Chipley and Taylor; whether anything was said. Chipley was one time president, in the beginning. I never agreed to purchase the Harmony mine or pay anybody for them. I sold whatever we possessed of the Harmony mine."

Crown Coal & Tow Co. v. Taylor.

We have covered so much space with the evidence, because of the importance of the case and of the fact that in our judgment the case turns wholly upon the one issue of fact.

That the old Crown Coal Company did not own the Harmony mine is undisputed; that Taylor and Adams did own it is, also undisputed, and it is conceded that at the time of the reorganization it was in some manner acquired by and transferred to appellant, the Crown Coal & Tow Company, and was thereafter held by appellant until sold by Leathe along with all the rest of appellant's possessions. We are of opinion that the evidence warrants the conclusion that appellant acquired this property from appellees, on the 25th day of March, 1893, by purchase, for the price of $2,500, and that the purchase price has not in any manner been paid, nor any part thereof.

On the trial appellant asked the court to give to the jury on its behalf an instruction as follows:

"The fact that Mr. Leathe was a stockholder and the owner of a majority of the capital stock of the defendant, if the jury believe from the evidence he was such owner, does not make a sale to him a sale to the company, nor a contract made by him a contract of the company."

The court refused to give the instruction as asked, but modified it. As modified and given it is as follows:

"The fact that Mr. Leathe was a stockholder and the owner of a majority of the capital stock of the defendant, if the jury believe from the evidence he was such owner, does not make a sale to him a sale to the company, nor a contract by him a contract of the company, unless he had authority to act for the company and did act for the company."

Appellant's counsel contend that the modification of this instruction is error, and such error as calls for a reversal of the case. They contend that the modification is misleading, in this, that it does not limit to the subject-matter, and also that there is no evidence to support it. The first criticism we regard as rather hypercritical. We think, having the evidence in this case, and the other instructions that

were given before them, a jury of ordinary intelligence would understand that the words, "had authority to act for the company," and the words, "did act for the company," referred to the subject-matter of acting for the company in the purchase of the property in question. The second objection to the modification is well taken. There is no evidence tending to prove that at the time appellant acquired the Harmony mine Leathe had any individual authority to act for appellant in the purchase of said mine, nor that he did so act for it in that respect. But the instruction as asked is not sufficiently supported by evidence and ought not to have been given in any form. It assumes that the contract was made by Leathe individually, and that the sale was made to him. There is no substantial evidence in the record tending to prove that the contract sued on, in this case, was made by Leathe, nor that the sale was to him. No witness testifies to it. No circumstances evidence it. It is true that both Taylor and Adams, on cross-examination, admit that they had on another occasion stated that they had sold to Leathe, but they testify in this case that they did not sell to Leathe, and that they did sell to appellant. While what they had said on a former occasion, if not satisfactorily explained, would tend to impeach them and might greatly lessen the weight to be given to their testimony, or render it of no weight, and while under a certain state of issues and evidence such admission would be substantive evidence, yet under the issues in this case and in the light of all the evidence, we think the admission by Taylor and Adams that they had made such statement does not so tend to prove that the contract sued on was in fact made by Leathe individually, or that the sale was in fact to him, as to warrant the court in submitting that question to the jury as an issue in the case. Much less did it warrant the court in assuming, as an undisputed fact in the case, that the contract was made by Leathe and that the sale was to him, which the instruction as asked appears to do. An instruction not sufficiently supported by material evidence ought never to be given, and where there is suf-

ficient material evidence to support an instruction it is error to assume facts, in the instruction, not admitted or proven beyond dispute.

All parties and all witnesses in this case agree in testifying, in substance, that whatever contract was made resulting in the acquisition by appellant of the Harmony mine was made in open meeting, where all the directors and all the stockholders were present and participating. In Ryan et al. v. Donnelly, 71 Ill. 100, the court says: "The third question relied upon by defendant is the modification of two of their instructions by the court. We are inclined to the opinion that these instructions should not have been given to the jury at all, as there was not evidence sufficient upon which to base them, and for this reason defendants are not in position to complain of their modification. But, even conceding it to be true that the court erred in the modification of the instructions, we are not disposed to reverse on that ground, where it is apparent that substantial justice has been done," etc.

Appellant complains of certain statements and remarks which, its counsel say, one of appellees' attorneys made to the jury during the course of his argument. No reference is made to any page of the record where such matter appears, nor do we find it in the abstract. Appellant's attorneys make complaint of such matter in their motion for new trial, but it does not appear, as a fact, in the bill of exceptions.

The judgment of the Circuit Court is affirmed.